Good afternoon, ladies and gentlemen. We're here to have a raw argument in Garcia v. Brockway and Thompson v. Councilman. You are splitting time? Are you splitting time? Yes, we are, Your Honor. I'm going to take 10 minutes. I don't know who you are. Your Honor, I'm here with the Santa Fe area legal attorney on behalf of our alliance, Appellee Michael Turk. I'll be taking 10 minutes, and the remainder of the time will be used by defendants v. Brockway and Stewart's counsel. They'll each take 10 minutes. Very well. Helen? Each side has 30 minutes, so just watch that number in front of you, and whatever you've got left over when you sit down will be left over to either co-counsel or rebuttal, in case of rebuttal. So appellants may proceed. May it please the Court, we appreciate the ability to rehear this case. It's a case that we feel is of high public importance. My name is Ken Nagy. I represent one of the appellants, Noel Garcia, and my co-counsel is here today, Maria Andrade. I'll be arguing for the first 15 minutes. And our client, Noel Garcia, was not able to be here today because he is severely disabled, and it's extremely difficult for him to travel. Mr. Garcia lived for a considerable period of time in an apartment that was inaccessible to him. Should I speak up? I apologize. Counsel, could I ask you a question that's confusing me? I'm trying to imagine the situation where the builder has sold the building. He's out of it. Been out of it for a year, two years, five years. As the statute goes on, it could be 50 years. And then he realizes, because he gets a letter from a disabled person's lawyer, that the building is out of compliance. What's worse, it always was out of compliance. I'm thinking, he can't just show up and do anything. I mean, if it's my building, he can't go over and tear out the steps and put in a ramp and tear out doorways and build bigger doorways. I'm thinking there's just nothing he can do about it, even if he is out of compliance. So I don't see how it can be a continuing wrong. Well, there is at least one case, one of the Baltimore neighborhood cases, in which the federal court refused to dismiss an owner who had nothing to do with the design and construction of the property from the lawsuit, ruling that the owner can be maintained as an apartment. Well, if I'm the owner, it's my building. I can still do something about it. But if I'm the builder and I sold it years ago, what can I do about it? If the owner is maintained as a party to the lawsuit, the owner, then injunctive relief could be granted by the court, and the defendant then could enter the property to effectuate the relief. How could he? I mean, if the owner, if the builder did do a lousy job, he didn't build it up to the handicap standards, the smart owner is going to tell him, get lost. I'll hire somebody who does it cheaper and better and follows the standards. You can't come into my building. Well, if the owner had anything to do with the design and construction, then they would be a defendant to the case. Well, yeah, but Garcia is not the owner. Garcia is the builder. Garcia is the plaintiff. I mean, Brockwood. That's correct. He's the designer of the complex. Architect, builder. But he doesn't own it. It's not his. He can't go there. He can't go tearing stuff out or putting stuff in. Well, it could be, injunctive relief could be granted by the court if the owner of the property is maintained as a defendant or a contractual relationship could be developed between the parties. Suppose I'm the district judge. Why should I issue an injunction to the owner to let this no good architect in who did a bad job the first time? In order to remedy the violation. Why not use some other architect and builder of the owner's choice? It seems to me that the architect and builder, you're saying, well, a judge could enjoin the owner to let him in and remedy the problem. Judge could also say it's the owner's building. The owner has to remedy it. But whether he uses this fellow or somebody else is up to him. And if he wants to, he can remedy it with somebody else and then sue the architect for not making it right in the first place. Well, our concern is getting these properties built right in the first place. If the court cuts off our ability to bring these cases by finding that the statute of limitations begins to run at the completion of the design and construction. Hold on. I didn't talk to you about policy because Congress gets to do that. I just talked to you about whether there's any continuing wrong because that would seem to require that the architect and builder have the power to do something about it. Well, I believe that. And we just handled a case in district court in Idaho in which the owner and the builder were able to reach a relationship where the builder was able to come in and remedy the problems. And that's a very different case than here because in that situation, the retrofits were able to be completed. In this case, the builder has shown no inclination to remedy the retrofits. What's your position on the statute of limitations? My position is that the statute of limitations begins to run at the time that the injury occurs, at the time that the individual, the tenant, becomes an actual aggrieved person as defined by the Fair Housing Act. Until then, Mr. Garcia, in this case, had no ability to bring a lawsuit. Under the initial panel's ruling, the discrimination occurred at the time that the design and construction was completed. And under that ruling, Mr. Garcia would have never had the ability to bring a lawsuit because he moved in many years after the building was completed. He did bring his lawsuit within two years of first encountering the barriers. But under the Fair Housing Act, the Fair Housing Act provides at section 3613, enforcement by private persons, an aggrieved person may commence a civil action within two years. And the definition of aggrieved person at section 3602, subparagraph I, is a person who has been injured by a discriminatory housing practice. Mr. Garcia became an aggrieved person when he first encountered those barriers. Ginsburg. Counsel, you're asking us to adopt what Judge Fischer's dissent in this case? Yes. Yes. Okay. What is your position on the amicus brief filed by Silver State Fair Housing where they have this third alternative, that the ongoing failure to make covered housing accessible such that the discriminatory practice terminates and the statute of limitations begins to run when a potential defendant either ceases to have control over the accessibility of the housing or brings the housing into compliance with the law? What's your position on that? Yes, I have. And I don't think it makes sense to say that the statute of limitations begins to run at the time that they sell the property because there's nothing in the language of the Act that indicates that there's anything that triggered the statute of limitations to running. There was no aggrieved person at that point. Now, to say that the statute of limitations continues to run as long as the property is unretrofitted, I don't think that necessarily makes complete sense, at least the rationale, because, again, we don't yet have an aggrieved person. Statute of limitations is something that I would argue is personal to Mr. Garcia, and once he became an aggrieved person under the Act, his statute of limitations began to run on his claim. Mr. Nagy? Over here, Mr. Nagy. Isn't it true that the HUD could file a complaint sua sponte without there being an aggrieved person when there is a FHA violation as to the design and construction of a building? Isn't it also true that the only subsection of 3604A through F that does not require a person to be injured is F3C? Yes, I believe that. That is the only portion. So then why doesn't the statute run from the time that the HUD sua sponte can bring an FHA violation action? Because the statute expressly provides for enforcement by private persons, and there are different enforcement remedies provided for under the Act. So under your analysis, if the building were built and the builder and nobody would occupy the building and it were put in some sort of suspension, it might be 30 to 40 years, and then the first occupant would not have the statute of limitations running against the designer or the builder. I think that there is the possibility that a long time could pass and there could still be potential liability. But as a closing remark, because I would like Mr. Armconecht to be able to have his full time, that I would ask this panel to keep in mind that the U.S. Supreme Court has ruled that the Fair Housing Act is to be construed promoting its remedial purpose, and that if there is ambiguity in the Act, and I don't believe there is, but if the panel feels that the provision regarding design and construction claims is ambiguous in some way, I believe that ambiguity has to be resolved in order to further the remedial purposes of the Act. And I don't feel that the majority opinion by the panel or the district court construed the Act to promote the remedial purpose of the Act. I don't actually understand what the ambiguity is. I look at the Act and it says, an aggrieved person may commence a civil action not later than two years after the occurrence or termination of the alleged discriminatory housing practice. And then I look at the definitions of discriminatory housing practices and the relevant one is a failure to design and construct those dwellings in the proper manner. So I don't understand the ambiguity. Your Honor, you're looking at 3604, and I would ask you to read subparagraph F in full, because actually the Act prohibits discrimination of the sale or rental or otherwise make unavailable because of handicap. That's subparagraph F. Kennedy. You're cutting into your co-counsel's time, counsel. Thank you, Your Honor. You can finish answering that question if you wish. No, no. I'm talking to you co-counsel. You can just pick up right. I wanted to hear the answer to that question. I'm curious. That's a good question, Your Honor. Richard Arnknecht, appearing on behalf of Appellants Thompson and the Disciplinary Attachments Committee. Your Honor, the way you've read it would make the previous decision of the lower courts correct. However, I ask you to read it again. I ask you to read it again. The relevant statute of limitations talks about two years after the occurrence or the termination of an alleged discriminatory housing practice. Now, the definitions of a discriminatory housing practice are provided at 3604, and the one that's or the ones that are at issue for the disabled are F-1 and F-2. What you quoted as being a discriminatory housing practice is, in fact, a definition of discrimination that relates to the F-1 and F-2 violations. Let me make this point here. If you look at 3604, it says, as made applicable by Section 3603 of this title, and some exceptions, it shall be unlawful. And then you go to look at F-1, to discriminate in the sale or rental or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap. And then you look at F-2, to discriminate against a person in terms and conditions and privileges, and it goes on. And then you then look at 3, which just kind of sticks out like a sore thumb, because 1, 3604 starts out, it shall be unlawful. Then 1 says, to discriminate. It gives in the sale or rental. 2, to discriminate against any person in terms and conditions. And then you get to 3, and it's like a third leg on a rooster. It says, for purposes of this, with all due respect to the chickens in this world, for purposes of this subsection, discrimination includes. And then it tells us, you look at C, a failure to design and construct those dwellings in such a manner that the public use and common use portions are readily accessible to and usable by handicapped persons. I mean, it just tells you. It just defines it. That's all. It makes it a definition. Roberts. Counsel, help me. Help me. Let's accept that point for purposes of discussion, that all Big C does is define discrimination. And the acts I should look at are in 1 and 2. Now, I'm trying to put 1 and 2 in concrete terms. I have a house I sold in 1974. Suppose that I find out that the owner of that house currently uses it as a rental, and he discriminates. Whenever somebody disabled comes around, he tells them, I don't want you in my house, I won't rent to disabled people. It seems to me I can't do anything about it. What's more, I happen to know that when I sold that house, it was not handicapped. We had to walk up a lot of steps to get into the house. But I sold it in 1974. So it seems to me, how could I make that house unavailable to a renter? Well, I see where you're going, Your Honor. But first, just technicalities. This act only applies to multifamily housing built for first occupancy after March 13, 1991. Well, let's transfer my 1974 date. It's just to try to put it in concrete terms. Right. If we assume it's later, the principles are the same. Multifamily housing, isn't it? Multifamily housing. I have four units or more. Okay, so it's a fourplex. Only the ground level units. I still don't see the difference. Say it's a fourplex, but you've sold the whole thing. I mean, if I built a fourplex and the guy I sold it to was a carpenter, no way he'd let me in to mess it up. He'd want to take care of things himself. And you spoke with my co-counsel about this earlier, Your Honor. And it is a problem. We're back where we started. Excuse me? We're back where we started. But it is a problem. You're correct, Your Honor. And the enforcement provisions of the Family Act. How can somebody who sold the house more than two years ago or sold the fourplex more than two years ago discriminate or not discriminate? How can he do anything since he doesn't own the house? Well, they did the discrimination back when it was built. That's when they did the discrimination. Well, the law was not in effect when it was built, was it? Not in 1974, Your Honor. Well, that's what we're talking about. Right. But if you build a fourplex after the statute went into effect, then you have to think about the handicap. But assume that. They may be using it. Assume the builder and the architect are totally at fault. They should have handicapped him. They built after the statute and regs. Still, how can they discriminate or not discriminate in the sale or rental if they are not, if they don't own it, so they can't sell it or rent it? Your Honor, there is case law that says that everyone involved in the process, the Baltimore Neighborhoods case, for example, and HUD regulations, everyone that's involved in the process is on the hook. But on the hook for what? When someone who is disabled encounters or is otherwise injured by the discrimination, the discriminatory condition that's set up. Do you answer if the multiplex is constructed in 1992 and it doesn't meet the various criteria for purposes of the handicap design and it's constructed in 1992, it's sold in 1995 by the owner to another owner. At this point, the design builder is out of the picture. Five years later, someone comes in to rent the apartment. What is the remedy against the owner, the first owner builder? The first owner builder, Your Honor? Yes. Well, the law provides that a lawsuit can be brought within two years of the injury. That's a statute of limitations, not a statute of repose. So if it's brought within that time, then the owner builder is brought into court and there the court has a wide array of remedies that it can make. It's certainly going to be limited. Okay. So more precisely, what would be the remedy against that first builder who's now completely out of the picture? I'm just trying to understand as a practical matter. What sort of act? Obviously, Your Honor, it would be up to the college judge. I mean, what does the act allow? The act allows you to join them from anything because they're not doing anything. Right. So that wouldn't work. Other appropriate relief, Your Honor. Does the act allow them to share in the costs of remediating the building so that it now comes with the statute? Yes, Your Honor. And one thing that courts have held is paying current residents of condos, for example, to allow the fixes to be made, to bring the ñ a number of accessible units in the community up to what Congress provided for under the act. But it seems to me you've never answered Judge Kleinfeld's question, and maybe it's because you were interrupted by other questions. But if F1 and F2 deal was rental and sale, and you say that 3 is just a definitional section. I'm sorry. Yeah, that's right. That 3 is just a definitional section, then the only thing that can amount to discrimination under your construction of the statute is rental or sale. A builder doesn't engage in rental. A builder doesn't engage in sale. An architect doesn't ñ I'm sorry I gave that impression. If I call your attention to F2, which F1 talks about sale or rental. You do take the position that it's either F1 or F2. It's either F2, yes, Your Honor. Okay. So it has to fall something that the ñ let's say the architect did, must fall within F1 or F2. So what is it? F1 deals with sale or rental. And F2, Your Honor, is terms, conditions or privileges of sale or rental. One of the conditions is the stark physical condition of the building, of the dwelling. I see. So when you say it says conditions of rental, you are not saying like the conditions of employment, like conditions of a lease, as in the terms of a lease. You're talking about condition of the property. That's how you ñ Broadly construed. That's how you view ñ The Supreme Court has broadly construed conditions as far as employment law goes. Broadly construed. Do you have a majority for this except that district court case out of Baltimore? Not off the tip of my tongue, Your Honor. I mean, what it sounds like as you're talking, it's like a circular remediation case, and that is a whole complex statutory scheme that permits that kind of looking back. So that's why I'm just having some trouble here, other appropriate remedies. If you just look at the statute ñ It's nebulous, Your Honor. Pardon me? It's nebulous. There's lots left up to the district court judge. Right. But if you have to ñ in order to have a cause of action, you have to discriminate in the sale or rental. I could understand that as to a present person who has some leasehold or ownership right. But I'm just having trouble understanding how, as a pure statutory matter, the original builder would fall under the cause of action. Okay. Your Honor, F-1 is the sale or rental. F-2, as the panel has determined in Smith v. Pacific Properties, is a more broad  It encompasses more persons, more types of discrimination. And F-2 talks about discriminate against any person in the terms, conditions or privileges of the sale or rental. Okay. But what ñ that doesn't really change the question, because you still have the sale or rental. There might be more things you could do bad under F-2, and I agree that it's a broader swath for some people. But how does the original design builder fall under F-2? One of the conditions of sale or rental is the physical condition of the building. If it has steps, that is a condition of the sale. Conditions of sale or rental meant 1,400 a month, no pets, that kind of thing. I thought condition of the building is different from conditions of the rental of the apartment. Your Honor, I'm basing my position on the broad interpretation of conditions that the Supreme Court has adopted. Can you ñ what does F-1 mean when it says to discriminate in the sale or rental or otherwise make available or deny a dwelling? What does that mean, that clause? Otherwise make unavailable or deny can also include structural things, Your Honor. F-1 cases are brought for home seekers quite often. So that's ñ Well, would the builder otherwise make available a dwelling if he constructed it in a way that the handicapped people couldn't use? Well, Your Honor, I think because you've got ñ it talks about discriminate here, and you've got a definition of discrimination in F-3C that you don't need to go outside of that portion of F-1. That is, by definition in the statute in F-3C, a form of discrimination. So that if there is building or architectural design that is inconsistent with the criteria set forth in F-3C, then there is ñ there is discrimination. I think one of the things that ñ Well, I know there's discrimination. The F-1 tells you what the acts of discrimination are. The acts of discrimination are sale or rental or otherwise making unavailable a dwelling, and the act doesn't occur until someone's injured. Now, what I'm trying to find out from you is whether someone's injured when he goes to rent a building because it's unavailable because of the way it's constructed. Is that a violation of F-1? Yes, Your Honor. I would ñ yeah, I think it's clear it is. Counsel, how do you define injury for purposes of the running of the statute of limitations and when that commences? How do you define injury? It's the same definition of injury that was adopted by this Court in Smith v. Pacific Properties. And that is what? A broad ñ a broad definition of injury to be consistent with the enforcement mechanism for housing access. Specifically, in the context of the facts of this case, what would be the injury? The injury are ñ could be any number of things. At the lowest end of the spectrum would be the dignitary tort type of injury. Who is your client? I have two clients, Your Honor, Tamra Thompson and the Disabled Rights Act. And what was the injury to your two clients and when did it occur? The injury to Tamra Thompson was when, acting as a tester, she encountered the discriminatory conditions at the Rancho Del Norte. For Disabled Rights Action Committee, their injury was the money spent on the testing effort. As far as dates, Your Honor, I'm sure it's in the record somewhere. So your position is that any time the tester goes to try to rent, that's when the injury occurs for purposes of the running of the station limitations? That's when there's a new ñ a new injury. Let me ask you this. Do you think it makes any difference whether the defect is a latent defect or a patent defect? In 1993, anybody could have driven by the apartment complex and had seen that there were not curb cuts or that there were shower heads improperly placed or the light switches weren't in the proper position. That was out there in front of God and everybody to see right then and there. As opposed to whether the walls in the bathroom were ñ Reinforced. ñ were reinforced for grab bars. You couldn't tell that until you tried to install it. Do you think it makes any difference if once the building is open to the public, open for tenants, anybody can come by and see that the building is or is not in compliance? I don't see any difference in the statute, Your Honor. If I were in charge of public policy, maybe I would make a difference. Your Honor, if I could stay the rest of my time for rebuttal argument. Well, they want these facilities available so people who are handicapped can go in and rent and live there. So you're not supposed to have a curb that's accessible to a wheelchair, and that's the law. That's what you need to have. If you're renting a place out, whether you see it or not, if you want that place and you'd like to live there and it's not accessible to you and you're handicapped and you're in a wheelchair, you don't have legs, whatever your problem is, it's got to be made accessible for you. And, Your Honor, one thing about the late payment. People become disabled over the course of time, Iraq veterans and so forth. I mean, it happens. I want to make sure I understand. If some kid is born tomorrow, March 2008, and 25 years from now goes to this apartment in Nevada and it's not fixed, he can bring a lawsuit against the architect who designed it back in 1993 or 2001, whatever it was? It's a continuing violation, Your Honor, until it's fixed. If I could reserve the last day and a half. Let me ask you this. Do the title policies cover any of this? I don't know, Your Honor. I'm not familiar with it. Shouldn't you know that? I mean, don't you have to get a – if you're going to buy something or rent it or whatever, don't you check the compliance? Usually, Your Honor, they expect to get compliance with local codes, and local codes are often not consistent with federal law. I'll give you two minutes. They've been pretty close, though. We'll give you two minutes for rebuttal. We'll hear from the other side. Good afternoon, Your Honors. My name is Josh Reisman. I'm here on behalf of Defendant Apolli Michael Turd. Construction began on the Villa Zarrancho del Norte in or around August of 1996. Less than a year later, on July 25, 1997, Appellant Disabled Rights Action Committee sent in its first tester, Ronald Ray Smith, to visit the villas. On October 2, 1997, Dracken Smith filed a HUD complaint concerning conditions at the villas. Approximately two weeks later, on October 15, 1997, final certificates of occupancy were issued for the villas by the City of North Las Vegas. According to the majority's opinion, this was the date that the two-year statute of limitations was triggered on Appellant's design and construction claims. Yet, Drack and its tester had already visited the premises and had already filed a HUD complaint before the statute of limitations had ever even begun to run. As demonstrated by the very facts in this case, the majority's interpretation of the statute of limitations won't let defendants off the hook, and it won't be disastrous for the disabled. The majority correctly held that the statute of limitations begins to run in a design and construction claim at the conclusion of the design and construction claims. Counsel, forgive me if this is a dumb question, but I don't know that much about construction. But so is your client admitting that, or I don't know if we've gotten that far in this litigation, but as of some month in 1991, it was required to design and construct dwellings so that the public and common uses were readily accessible to the handicapped persons. Are you saying your client failed to do that? No, Your Honor, I'm not. And you shouldn't be liable because you want to argue that the statute of limitations I mean, I don't get it. Does it cost that much more money to comply? I mean, why would your client, when the law is passed as of 1991, build something in 1997 that doesn't comply with the federal law? Your Honor, this case was decided on a motion to dismiss. The facts have not been developed in this case. Okay. So you're not admitting those facts. No, I'm not admitting that there was any violation. You haven't had any of these facts come out. So you still have in front of you the argument that you didn't fail to design. Your client didn't fail. That hasn't. I'm not admitting my client did or did not fail to design. Those facts haven't been developed. I mean, if this were to go back to trial, would that be your position? No. I believe that we would take the position that we did what was necessary and that we complied with what was necessary under the FHA. But you have not taken a position on this, and you haven't been required to take a position on it. Exactly, Your Honor. This was decided. And you didn't really commit one way or the other without consulting with your client. I mean, on this point, this is a factual point. This is a factual point. It has not been developed, Your Honor, because it was decided at a motion to dismiss stage in which that wasn't needed. Okay. So let's not talk about your client. Let's talk about an abstract developer, say, in the San Fernando Valley, who knows that as of 1991 that they have to construct a building in a certain way and assumed they failed to do that. Even if they've long sold the building, they still violated this law, correct? Not necessarily. They may have the defense that they relied upon their architect. Well, they could have lots of defenses, but if they're they violated this Federal law. Why don't you assume? I'm interested in the answer to Judge Wardlaw's question. Why don't you assume a builder, an architect who knowingly set out to build a building that violates Federal law and go from there on the statute of limitations? Okay. Under the statute of limitations, it begins to run two years after the occurrence or termination of a discriminatory housing practice. In this instance, the discriminatory housing practice can be found under Section 3604F3C, and it is the failure to design and construct multifamily housing in accordance with the FHA's standards. All right. So if you assume that they, you know, what Judge Kleinfeld assumed, they failed to do that. I mean, why? I mean, I don't understand why that failure changes just because they sell the property. It doesn't change, Your Honor, because they sell the property. According to the statute of limitations, the violation is the failure to design and construct accessible housing. That occurs. Under the statute of limitations, it's the agreed person. That's where the agreed person enters into the act, right? All right. Your Honor, the way that the majority interprets the statute of limitations, and I believe it's correct. Well, I understand. I know what the majority held, and I'm sure you believe it's correct. I just want you to answer my question. Okay. To answer your question more directly, I don't believe that the FHA creates an ongoing duty for anyone to correct inaccessible features. The FHA's language doesn't say it creates an ongoing duty. Congress could have said in the FHA, quote, there is an ongoing duty for all people involved in the development of design and construction to correct inaccessible features going into the future. It doesn't say that. Congress knows how to say that. It did say that for the ADA. You think Congress said if you can get away with this for two years because no disabled person sees what you've done, that you're home free, all you've got to do is build it and try to get through a two-year period before disabled people have any idea that there's a violation that affects them. Is that your position? Your Honor, as was stated in the amicus briefs filed on behalf of the industry, the typical plaintiff that brings this type of claim, the majority of these plaintiffs are fair housing organizations. I'm asking about a disabled person who goes to your development and finds out after two years because nobody has seen it. They maybe have very effective groups, but I don't know that they're able to patrol every development in the country. So let's assume if you can build a development where nobody goes and checks you out and that after two years you're home free. I hear what you're saying, Your Honor. Let me just state very quickly, it would be very difficult for no one to check you out. It's very easy. That's part of the assumption, so you have to accept that. Okay. After two years of this. What does this matter? I mean, if we assume the bad builder and architect who intentionally set out to save money by violating the law, they're a couple of idiots. They either don't consult their lawyers or they don't have lawyers, and they knowingly build a fourplex, knowingly in violation of law, and 20 years later somebody's handicap comes and that's the first time anyone's noticed that the place doesn't have ramps and whatnot because nobody cared before. If I understand your argument, you just do not want to say statute of limitations bars the claim. You want to make some kind of equitable argument. And I feel like if you need to make an equitable argument, I don't understand your argument. Your Honor, to answer your question, at that point in time, the remedies available to that particular plaintiff would be reasonable modifications or an accommodations claim under F3A and B. If there were a pattern of practice. Against whom is what's interesting. I'm sorry? Against whom is the interesting question there. It would be the purpose of the FHA is to provide accessible housing to the disabled. And they can do it at that stage. Does the agency and the handicapped person, do they sue the guy that owns it 20 years from now or do they sue the builder that built it 20 years before? The current owner would be subject to a reasonable modifications and accommodations claim under F3A and B. And if there were a pattern or practice of resistance or a group's denial of rights raises an issue of general public importance, the attorney general has three years to bring a claim for damages and five years to bring an action for civil penalties and can always bring a claim for a preliminary injunction. On this bad builder, let's see. I guess in Alaska the statute of limitations on contracts is six years. I don't know where it is in Nevada or California. But usually it's a lot longer than two years. So I suppose if a person built against the law and skated for two years after selling out and then went out for a drink and he could relax and forget about it, the person that bought it from him would probably have a covenant and a contract that would enable him to sue. Is that the way it works? I mean, it could be the case that there's an indemnification provision in the contract between the current owner and the prior owner in which if they got sued for those provisions, they'd seek indemnity against them. Probably in that architect's form, isn't it? That architect's association form. You can sue the architect if they didn't design it to comply with law? I don't know offhand, Your Honor. I mean, that would make sense that that could be in there where they could seek indemnity against the owner. The way you would read the statute of limitations here, the purpose of Congress after two years was to shift all of the costs to the innocent middle party. Could you sit down, please? It's distracting. To the innocent middle party. And he would have to pay all of the costs of this instead of being able under the I mean, the builder, I'm sorry. No, Your Honor. Because after two years, the Attorney General's office could still bring a claim for damages. It could bring a claim for penalties. But the Attorney General's office doesn't always act with expedition. I'm telling you, we have private Attorney Generals here, including the person who's injured. And you just said, as I understand it, the person who's injured five years from now has a cause of action against the current operator of these buildings, who's bought from this builder. And you think the purpose of the two-year statute was to make sure that the current party who's bought the building has to pay all of the costs and none should be paid by the builder of the building. Under the statute, for reasonable accommodations or reasonable modifications claim, that the current owner would not have to pay those costs. The renter would have to pay those costs. However, if the Attorney General brought the claim, it could still go against the original developer. Well, why doesn't the current person who's denied rental or purchase of the building because of the lack of accommodations, he has two years to sue, doesn't he, after he's denied the rental or the purchase? No, Your Honor. He has two years to sue after the completion of the design and construction in a noncomplying manner. He can't sue. He goes to rent a building, rent an apartment in a building, and it doesn't comply with the Act. And that's why he's not rented the building or why he can't rent it. He can't sue for that to have it changed? At what point in time, Your Honor, if it's beyond two years after the completion of the design and construction? Let's say it's beyond two years. Yeah. I thought you said he could sue the current owner. He can seek a reasonable accommodation or modification from the current owner, and, Your Honor, if that's not granted, he could sue the current owner. Can I ask you a question? Okay. Yes, Your Honor. Wait one second. That was my question to you, that Congress intended to shift all the costs to the current owner rather than the evil builder. No, Your Honor. The current owner wouldn't have to pay for the accommodations or the modifications. But they would have to permit the disabled person to modify the unit for themselves. If the owner failed to permit the reasonable accommodation, then they could be sued by the renter. I'm taking up a lot of my time. I want to ask you a question. Now, is the real problem here, the bugaboo that you fear, are these private organizations that go around and check all these buildings out to make sure that they comply with the law? That's a big problem. I have no problem with that, Your Honor. And I think that they could, exercising reasonable diligence, they could determine that a building is noncompliant from the moment the building permit is issued. They can do that just so they do it within a two-year period. They just have to do it within the statute of limitations. Well, that's your statute of limitations. That's a statute of limitations that I believe was written by Congress. You've got to get someone to agree first, see? But that's what you worry about is these rascals going around that are trying to protect the handicapped and that are checking out these buildings to see that they comply. No, Your Honor. I want them to get in there as early as possible and tell us there's something wrong so we can correct the problem before the statute runs. Get the builders to set up a fund and let them hire a thousand people to go out and repair the building. If Congress requires that, that's great, Your Honor. I have to be happy to administer. Can I please? I know. This is the part I don't get, though. You want the testers to come in and tell you what's wrong with the building. How come the people doing the construction don't know what's necessary? It's not clear-cut, Your Honor.  You have to do this. You have to do this. They have what's called safe harbors that if you do it this way, HUD believes it's not a violation. But a lot of times the fair housing organizations come in and they, as I understand it, they expect compliance with standards that even go beyond the safe harbors, and they suggest that that's a violation of the FHA.  I have to give my co-counsel. Mr. Tenney. Do you want me to sit down? Just sit, just sit. One last point I just need to make very quickly. You know if you keep talking and you never get more ---- Mr. Turk does any more. I assure you, you will not get any help from me in sitting down. You can sit. Or you can keep talking. I will keep talking for 15 seconds. Mr. Turk is not the current owner of the villas as mentioned in the decision. The current owner is THG Villas 1 LLC. And the decision below just misconstrues that fact. Are you talking about the district court decision? No, Your Honor. With all due respect, your decision, Your Honor. The panel decision? Yes, Your Honor. Because I thought we looked into it and we thought that the allegation was that Mr. Turk was the owner. He is not the owner, Your Honor. It's THG Villas 1 LLC. Mr. Turk owns less than a one-third ownership interest in the villas. He is not the controlling member. He, like the other ---- I'm sorry. He is not an owner because he owns less than a third. Hmm. Okay. You missed it. Thank you.  I own less than GM. That of GM. Am I not an owner? Counsel, just to follow up. This is 12B6. Wait. It's a motion to dismiss. So you take the allegations that the complaint is true. What is the complaint alleged? Does it allege that Turk's the owner? No, it does not, Your Honor. It alleges ---- it brings a claim against Mr. Turk in his capacity as the director and or officer of the original developer or the director and or officer of the construction contractor who does not sue him in his capacity as the current owner because he's not the current owner. And to answer your question, Your Honor, yes, you own shares of Coca-Cola, therefore you own Coca-Cola, but that doesn't mean that you own the plant that Coca-Cola owns. All right. Good afternoon. My name is Phil Obrecht. I'm from Hall Farley, Obrecht & Blanton, and Boise, and I represent Dennis Brockway. Dennis Brockway is the developer. He's the contractor. He built South Pond Apartments. Noel Garcia is the plaintiff in our case. Our case was decided by way of summary judgment. And the basic facts are, indeed, that Mr. Brockway, after having built the project, sold the last building in 1994. The last certificate of occupancy was issued in 1993. This lawsuit was filed May 12th of 2003, almost 10 years. He's been out of the picture with respect to that property. So the issue is very clear with respect to Mr. Brockway. There has been no admission of any liability with respect to any of the allegations that have been made, except that the summary judgment motion was made and granted with respect to the statute of limitations alone. So the issue seems to be fairly pure where he is concerned. An interesting fact in Mr. Brockway's case is that he voluntarily made a settlement with the HUD action that was brought against him and others. And instead of defending that, he entered into a conciliation agreement. And he put in $6,000 to a modifications fund. There are some discrepancies in the briefing as to what happened with respect to his notification, et cetera, of the owners of the buildings under the conciliation agreement. I'm not going to go into the interference portion of the case. I think that was clearly decided, and I don't know that Your Honors have any questions about that. Those specifically are addressed by the Court in the majority opinion as indicating that there were no facts to support the interference claim, and there truly were not. I'll address them if there are specific questions. The two-year statute of limitations, I will rest on much of what has been said in arguments before, but perhaps to prompt some questions toward me, I would direct the Court's attention to the United States v. Kubrick, the United States Supreme Court case, where the Supreme Court talked about statutes of limitation and did not denigrate them. The Supreme Court talked in terms of said these enactments, meaning statutes of limitation, are statutes of repose. And although affording plaintiffs the legislature, excuse me, and although affording plaintiffs what the legislature deems a reasonable time to present their claims, the Supreme Court went on to say they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence. How do you square that language with language from the Supreme Court that says that statutes of limitations do not begin to run until a plaintiff suffers an injury that enables him to sue? How do you square those two lines of authority? Well, Your Honor, first off, statutes of limitation are by the Supreme Court not disfavored. They are public policy, and they should be supported as the public policy of our nation, one facet of the public policy. There are some statutes of limitation, depending on how they are written by Congress, that are interpreted to allow, for example, the clarification of an ambiguity, like, for example, in the Tort Claims Act. And where the Tort Claims Act talks in terms of accrual of a cause of action, the courts have to interpret what it means for a cause of action to accrue. And that's where we have gotten into the discovery issues in statutes of limitation. So what does that mean in this particular case? In your view, when did the plaintiff suffer an injury that enabled him to sue in this case, in your case? In this case, the statute of — I'm going to duck your question for a minute and then come back to it. Are you going to duck it again? I hope not, Your Honor. You already ducked it once. All right. Let me — I will just answer. On sober reflection, rephrase what I said. The question deserves an answer. All right. It does deserve an answer. The injury occurred under the statute of limitations, if at all, within two years of the completion of the design and build phase. Before Mr. Garcia even started to live there? Yes. Absolutely. So how was he injured? I mean, before he even began to live there, how could he have been injured? I don't think he was. Is injury an element of the cause of action? No. I don't think his injury is an element of the cause of action. Well, it's an — his injury has to be an element of his cause of action. Your position is — His injury is not. Some wrongs require injury. For example — Correct. — slander requires damages.  And I'm just asking, is injury an element? Injury is an element for him to have standing. Standing is different from cause of action. For example, if I drive my car into your car at the intersection of 7th and Mission, you have standing to sue me, but Judge McKeown doesn't. Damages are an element of the cause of action. The fact that she has no damages prevents her from having standing, but there is a cause of action at that point. I think that — For you. I think that for there to be a cause of action, there has to be injury of some type under the Fair Housing Act. For the statute of limitations to run, I do not think there has to be injury. Getting back to Judge Rawson's question, would I have any position? His position is that for two years after construction, anybody who's injured can bring a lawsuit. If you're injured afterwards, you're simply outside the statute of limitations, even if you suffer injury. That's my point. That's my point. The importance of injury not being an element is that testers can sue. Is that right? That's correct. And testers — If you needed injury, then testers could not bring lawsuits. That's correct. That's correct. In addition to that, anyone who anticipates having — or anyone who anticipates renting a unit, for example, can find out whether or not there's a violation of this statute by going down to City Hall in Idaho, anyhow, and looking at the plans when they are filed at the time the building permit is issued. I found it interesting that Congress did not require injury in a clear way. I thought maybe the organizations representing handicapped people lobbied the requirement out just so that they could use testers. Is there — I don't know whether — — anything consistent with the way the statute is worded? Well, Your Honor, I think that — I don't know the answer to your question. All I know with respect to this statute of limitations is that it appears to be clear. It doesn't have the ambiguity that has required application of the discovery rule, et cetera. And I have very little time left. I'd like to ask about your question about injury. I could sue for this Act being violated. I would be — have a cause of action for any house in this country that were disabled people or unable to use it. That gives me a cause of action. For a multifamily dwelling, if you were a tester, you could sue. No, no. I'm just me. I'm not a tester. You said I don't need an injury to have a cause of action. You have to have a disability. Why? Or you have to be a tester. Why? It depends on the cause of action that you're bringing, Your Honor. If I don't need an injury, why is only a disabled person allowed to sue? Well, being a disabled person doesn't mean that you have an injury under the statute. No. You said I don't need an injury under the statute to sue. So anybody can sue, right? Everybody has a cause of action, whether he's injured or not. Everybody who fits the qualifications of the statute has a cause of action. Is there a statutory definition of this phrase in 3613A1A, a grieved person?  An aggrieved person may commence a civil action. Should I look somewhere for the definition? It is at 3602I, aggrieved person. Yes. Thank you. Did I hear you say that within the two-year period, anybody could go down and look at the plans and determine whether or not there was compliance with their housing regulations? No, Your Honor, much earlier than just within the two-year period of time. Right after the plans are filed and they go through design review, at least in our community, and then a building permit is issued, then they're public documents, and anyone can go and review those plans and see if there is a violation. And that, of course, has been done. But isn't that a little inconsistent with your co-counsel's comment to me, that it's all gray and you can't really tell whether there's a violation or not, so much so that either the contractor or the architect can figure that out? I don't. I think I didn't hear that. I didn't hear that. I heard a discussion about patent and latent ambiguities. You didn't hear me say how come they don't know whether they're in compliance or not? And he explained to me that there's this gray area and it's not really clear whether there's a violation or not, and sometimes they don't find out until later that there's a violation, all of that? Well, I don't know that that's a – certainly that's a possibility, that someone wouldn't be able to go and look and know how to read plans. But if they are engaged in their due diligence, they will be able to do just that, and they do it all the time. Well, how can you expect a handicapped person that wants to rent a place, you want them to go down to the planning division or whatever it is in their wheelchair and start asking to see the plans? No, Your Honor, that's not what I expect. But what I do expect is that the process that Congress put into play, where actually Congress has funded organizations that represent the handicapped and go and police these issues, I expect them to do their due diligence and do so. And within that, it's not a two-year period of time. That's actually continuing. It starts early, goes for a 12- to 24-month period of time before there's actually, after the building permit's issued, up to the time that there's a certificate of occupancy, then two more years is added on. It's up to four at that point in time, if you give me 24 months on that, from a practical standpoint. How many people do that? Lots of organizations do that. How many people do that? People in every State. People in every State do that, Your Honor, who are advocates for the handicapped. And I'm cutting off my co-counsel's time. But what go ahead. The statute's not on you. Thank you very much. I'm afraid we're out of time. Thank you. Your Honors, Congress provided a 30-month grace period for architects and builders to get their act together to build in compliance with the regulations that HUD provided, nice, concise, well, maybe not concise, but clear enough, safe harbor for compliance. If there are people who are suing for things that fall within the safe harbor, I'm not aware of them, and I regret that that's happening. Also, as regards architects. But you do agree that this can happen long before construction starts? Somebody can bring a claim? Yes, Your Honor. Claims can be brought before construction starts. If there's some sort of insider. This is not pie in the sky. This is reality. They can go down, look at the plans, and say they're not perfect, and they can bring the claim right there. I've heard it as far as ADA, Your Honor. I've not heard of it as far as multifamily units. I've heard of the design of stadiums and so forth with regard to the ADA, but not with regard to the Fair Housing Act, Your Honor. I suppose it's possible. I just have never heard of it. But as far as architects go, interestingly, this concept of no one driving by or inquiring about the accessibility of a unit until two years have elapsed since completion of design construction, well, architects, under the statute of opposed construction that's been adopted here and there, would be able to draft their plans, stamp on them, not for use for any construction to be completed before two years from this date and be in fall within, fall outside of the statute of opposed. And has this happened often in your experience? No, Your Honor. That is also a matter of conjecture. So your answer to me is the other stuff hasn't happened in your experience, so it doesn't count. So you call this argument something that's never happened in human history? Well, Your Honor, we seem to be in the realm of conjecture as opposed to what the statute provides as far as the clear definition of F3C as being a definition of discrimination. But this has never happened as far as you know. Somebody stamps. No, Your Honor, never has. People are talking about the possibility of people coming by and suing 50 years later. Thank you. Your time is up. We are now adjourned.
judges: Kozinski, Pregerson, Reinhardt, Kleinfeld, Silverman, McKeown, Wardlaw, Rawlinson, Clifton, Bea, Nr Smith, Cjj